UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
LESLIE H. L.                  :    Civ. No. 3:21CV00150(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION[1]    :    December 16, 2021
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Leslie H. L. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to

---

[1] Plaintiff has named Andrew Saul, a former Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. See Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

remand for further administrative proceedings. [Doc. #14].
Defendant moves for an order affirming the decision of the
Commissioner. [Doc. #17].

For the reasons set forth below, plaintiff's Motion to
Reverse Decision of the Commissioner and/or to Remand to the
Commissioner **[Doc. #14]** is **GRANTED, in part,** to the extent it
seeks remand for a new hearing, and defendant's Motion for Order
Affirming the Decision of the Commissioner **[Doc. #17]** is **DENIED**.

I.    **PROCEDURAL HISTORY**[2]

Plaintiff filed an initial application for DIB on January
30, 2015, alleging disability beginning February 1, 2013. See
Certified Transcript of the Administrative Record, Doc. #12,
compiled on May 6, 2021, (hereinafter "Tr.") at 76. Plaintiff's
application was denied on April 27, 2017. See Tr. 73-92.

Plaintiff filed a renewed application for DIB on December
4, 2018,[3] again alleging disability beginning February 1, 2013.
See Tr. at 235-38. Plaintiff's application was denied initially
on March 6, 2019, see Tr. 105-17, and upon reconsideration on

_____

[2] In compliance with the Standing Scheduling Order, plaintiff
filed a Statement of Material Facts, titled "Plaintiff's
Statement of Material Facts," see Doc. #14-2, to which defendant
filed a responsive Statement of Facts. See Doc. #17-2.

[3] The ALJ's decision reflects an application date of November 8,
2018. See Tr. 10. However, the record reflects an application
date of December 4, 2018. See Tr. 235. This discrepancy does not
affect the Court's analysis.

April 25, 2019. See Tr. 119-28.

On February 11, 2020, plaintiff, represented by Attorney Dennis Ciccarillo, appeared and testified at a hearing before Administrative Law Judge ("ALJ") John Noel. See generally Tr. 31-72. At the hearing, plaintiff amended the alleged onset date of disability to April 28, 2017. See Tr. 35. Vocational Expert ("VE") Albert Sabella appeared and testified by telephone at the hearing. See Tr. 32-34, 63-71. On March 31, 2020, the ALJ issued an unfavorable decision. See Tr. 7-25. On December 7, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's March 31, 2020, decision the final decision of the Commissioner. See Tr. 1-6. This case is now ripe for review under 42 U.S.C. §405(g).

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229

3

(1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F. 2d

4

137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that an impairment or combination of impairments "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis to determine if a person is disabled. See 20 C.F.R. §404.1520(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has

> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)

(per curiam). The residual functional capacity ("RFC") is what a

person is still capable of doing despite limitations resulting

from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "was not under a disability within the meaning of the Social Security Act from April 28, 2017, through" June 30, 2018.[4] Tr. 11.

---

[4] A claimant seeking DIB for a period of disability must, in addition to presenting evidence of his disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that he was disabled prior to the expiration of his insured status, i.e., as of his date last insured. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's date last insured is June 30, 2018. See Tr. 247, 257. Accordingly, and as acknowledged by the ALJ, the relevant time period under consideration is the amended alleged onset date of April 28, 2017, through June 30, 2018. See Tr. 12.

At step one, the ALJ found that the plaintiff "did not engage in substantial gainful activity" during the relevant period. Tr. 12. At step two, the ALJ found that, "through the date last insured," plaintiff suffered from the severe impairment of "degenerative disc disease of the lumbar spine." Id. The ALJ found that plaintiff suffered from the following non-severe impairments: "hyperlipidemia, essential hypertension, osteoarthritis, PTSD, anxiety and depression[.]" Tr. 13. The ALJ considered these non-severe "impairments in formulating [plaintiff's] residual functional capacity[.]" Id.

At step three, the ALJ determined that "[t]hrough the date last insured," plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 14. The ALJ specifically considered Listing "1.04 (disorders of the spine)[.]" Id.

Before moving to step four, the ALJ found that, "through the date last insured," plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b), but with the limitations described in this paragraph. The claimant could occasionally climb ramps and stairs, and he could occasionally climb ropes, ladders and scaffolds. Furthermore, the claimant could occasionally balance, occasionally stoop, occasionally kneel, and occasionally crouch and occasionally crawl.

Tr. 14.

At step four, the ALJ concluded that "through the date last

insured," plaintiff "was capable of performing his past relevant work of building superintendent and warehouse supervisor as actually and generally performed." Tr. 20. The ALJ further found that, "[i]n addition to past relevant work, there were other jobs that existed in significant numbers in the national economy that [plaintiff] also could have performed[.]" Tr. 21.

At step five, considering plaintiff's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines," Tr. 21, the ALJ found that plaintiff could perform the additional jobs of assembler; sealing machine operator; and housekeeper/chambermaid. Tr. 21-22.

## V.   <u>DISCUSSION</u>

Plaintiff asserts that the ALJ erred: (1) in his evaluation of the medical opinions by failing to explain how he assessed the persuasiveness of the opinions and, in particular, failing to credit the opinion of Dr. Frazier, see Doc. #14-1 at 2-7; (2) by failing to base the RFC on any medical opinions, see id. at 7-11; and (3) at steps four and five by basing his findings on an improperly determined RFC. See id. at 11-13. Plaintiff challenges only the determinations of the ALJ relating to his physical and exertional limitations, rather than any psychological, mental health, or nonexertional limitations.

Because the Court finds that the ALJ erred in his

formulation of the RFC without reliance on any persuasive medical opinions, the Court does not reach plaintiff's other arguments for remand or reversal.

Plaintiff asserts that, by finding both of the medical opinions in the record assessing plaintiff's physical limitations "unpersuasive," the ALJ was effectively left with no opinions on which to base the RFC, and thus impermissibly substituted his own opinion when formulating the RFC. See Doc. #14-1 at 7-11. Defendant responds that the ALJ permissibly based the RFC on "all the relevant evidence of record," including the "relatively benign examination findings and testing results[.]" Doc. #17-1 at 8.

A plaintiff's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. §404.1545(a)(1). The RFC is assessed "based on all of the relevant medical and other evidence." 20 C.F.R. §404.1545(a)(3). "An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009).

> An ALJ's RFC determination need not perfectly correspond with any of the opinions of medical sources cited in his decision. However, an ALJ is not a medical professional, and is generally not qualified to assess a claimant's RFC on the basis of bare medical findings. Indeed, an

> ALJ is prohibited from 'playing doctor' in the sense
> that an ALJ generally may not substitute his own judgment
> for competent medical opinion.

Gillespie v. Saul, No. 19CV06268(MJP), 2020 WL 5628068, at *4

(W.D.N.Y. Sept. 21, 2020) (citations and quotation marks

omitted). An ALJ, in sum, must rely on some expert medical

opinion in the record, as to a claimant's functional abilities,

to formulate the RFC.[5] That expert medical opinion need not

necessarily come in the form of a formal "Medical Source

Statement," but it must provide "an assessment of [the

claimant's] limitations" from a medical professional. Tankisi v.

Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013).

Likewise, the expert medical opinion need not delineate each

limitation or ability with precision, but it must be

sufficiently informative so as to support the findings embodied

in the RFC. See Trepanier v. Comm'r of Soc. Sec. Admin., 752 F.

App'x 75, 78-79 (2d Cir. 2018) (finding that medical opinion

permitting plaintiff to return to "medium work" fairly supported

---

[5] Medical opinions are different from medical evidence. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions." 20 CFR §404.1527(a)(1). In contrast, "[o]bjective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. §404.1529(c)(2).

an inference that plaintiff could lift weight in accordance with the accepted definition of "medium work"); see also Carmen P. v. Saul, No. 19CV01557(DGL), 2021 WL 795312, at *2 (W.D.N.Y. Mar. 2, 2021) (An ALJ may not "arbitrarily substitute [his] own lay opinion for competent medical opinion evidence," but an ALJ may use "the record as a whole, even if it does not perfectly match a particular medical opinion[]" to determine an RFC.).

Here, the ALJ was presented with two medical opinions regarding plaintiff's physical limitations and found both to be "unpersuasive." Tr. 17-19. Dr. Frazier, plaintiff's treating physician, completed a "Lumbar Spine Medical Source Statement" dated January 21, 2020. Tr. 465-68. Dr. Kaplan, a state agency consulting physician, reviewed plaintiff's medical records and issued an opinion in connection with the disability determination dated January 25, 2019. See Tr. 99-102.

In spite of the complete absence of "persuasive" medical opinions in the record, the ALJ determined that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b), but with the limitations described in this paragraph. The claimant could occasionally climb ramps and stairs, and he could occasionally climb ropes, ladders and scaffolds. Furthermore, the claimant could occasionally balance, occasionally stoop, occasionally kneel, and occasionally crouch and occasionally crawl.

Tr. 14.

The Court views a finding that an opinion is "unpersuasive"

under the new regulations as equivalent to a finding that the opinion is entitled to "no weight" under the old regulations. Under the regulations governing claims filed before March 27, 2017, medical opinions were assigned "weight" based on various factors. 20 C.F.R. §404.1527(c). Under the regulations governing claims filed on or after March 27, 2017, the ALJ determines "how persuasive" a medical opinion is, based on similar factors. 20 C.F.R. §404.1520c. A finding that a medical opinion is "unpersuasive" rather than "somewhat persuasive" or even "minimally persuasive" indicates that the opinion was given no effect by the ALJ. As a matter of plain language and common sense, an unpersuasive opinion could have no role in the decision-making process. This makes a declaration that an opinion is "unpersuasive" equivalent to an assignment of "no weight" to that opinion. See, e.g., Warren v. Comm'r, SSA, No. 4:19CV00302(ALM), 2020 WL 5849869, at *2 (E.D. Tex. Oct. 1, 2020) ("By giving the consultants' opinions 'little weight' ... the ALJ indicated that their testimony was not relied on in reaching his decision. In a judicial opinion, the word 'unpersuasive' generally constitutes a complete rejection of the position or argument advanced.").

The ALJ gave no weight to the two medical opinions that could have informed an RFC. That left the ALJ with no expert opinion as to plaintiff's limitations and abilities. "Having

assigned little or no weight to the opinions of all of [plaintiff's] treating sources ... the ALJ had little affirmative evidence on which to rely in making his assessment." Badillo v. Berryhill, No. 18CV08414(ER), 2020 WL 1528118, at *9 (S.D.N.Y. Mar. 31, 2020) (granting plaintiff's motion for remand). Formulating an RFC where he has given no weight to the medical opinions of record is particularly problematic where, as here, "an ALJ sets aside a physician's detailed objective findings in favor of [his] own lay interpretation of raw medical data." Carmen P., 2021 WL 795312, at *2.

Rather than relying on any expert medical opinion or functional assessment, the ALJ relied on treatment notes, which he characterized as "generally benign." See Tr. 17-19. This characterization is not found in any of the medical opinions; it is entirely the ALJ's own assessment. The notes do not comment on how plaintiff's conditions affect his functional abilities. Where the treatment notes available "generally contain bare medical findings and do not address or illuminate how [plaintiff's] impairments affect [his] physical ability to perform work-related functions[,]" such notes are not sufficient to support an RFC. Theresa W. v. Comm'r of Soc. Sec., No. 20CV00704(LJV), 2021 WL 4324421, at *3 (W.D.N.Y. Sept. 23, 2021) (citation and quotation marks omitted).

"In the absence of supporting expert medical opinion, the

15

ALJ should not have engaged in his own evaluations of the medical findings." Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996). The Commissioner's argument on this point reveals the central flaw in the ALJ's approach. The Commissioner argues: "If Plaintiff were truly as limited as he and his doctor suggested, one would expect to see more extensive examination findings than mild tenderness or mildly reduced range of motion[,]" and that "[n]o medical expertise is required to reach such a conclusion." Doc. #17-1 at 10. But determining what limitations are (or are not) supported by "mild tenderness or mildly reduced range of motion" would require an expert medical interpretation of treatment records, which the ALJ is not qualified to make. See Deubell v. Comm'r of Soc. Sec., No. 18CV00935(HBS), 2019 WL 5781860, at *4 (W.D.N.Y. Nov. 6, 2019) (collecting cases, and accepting plaintiff's argument: "Left with no opinion evidence supporting it, the RFC was an obvious product of the ALJ's own lay interpretation of the record.").

Here, the ALJ evaluated the treatment notes and interpreted them himself as "benign," then used that interpretation to craft an RFC. In so doing, the ALJ committed error. See, e.g., Filocomo, 944 F. Supp. at 170 ("[T]he ALJ simply evaluated the tests anew and — without citing any supporting expert testimony — reached conclusions that differed from those of Dr. Wolpin.").

By labeling the medical opinions as unpersuasive, the ALJ

effectively gave them no weight. By giving each of these
opinions no weight, the ALJ was left with no medical opinion on
which to act and, by default, substituted his own medical
judgment. That error is sufficient to require remand. The Court
further notes, however, that specific aspects of the RFC not
only are unsupported by the medical opinions available, but are
contradicted by them, also requiring remand.

For example, the ALJ found that plaintiff could
"occasionally climb ropes, ladders and scaffolds[,]" Tr. 14, but
both Dr. Kaplan and Dr. Frazier opined that plaintiff could
never climb ropes, ladders, and scaffolds. See Tr. 100, 112,
467. The ALJ also found that plaintiff could "perform light work
as defined in 20 CFR 404.1567(b)[.]" Tr. 14. "Light work"
includes "lifting no more than 20 pounds at a time," or, put
differently, lifting up to 20 pounds at a time. 20 C.F.R.
§404.1567(b). Again, both Dr. Kaplan and Dr. Frazier found that
plaintiff could never lift twenty pounds at a time. See Tr. 99-
100, 112, 467. Finally, the ALJ found that plaintiff could
"occasionally crawl." See Tr. 14. Dr. Kaplan opined that
plaintiff could never crawl. See Tr. 100, 113. Dr. Frazier did
not opine on whether plaintiff could crawl but opined that
plaintiff could never bend. See Tr. 467. In sum, the ALJ
declared plaintiff able to do things that the experts declared
he could not.

Ultimately, once the ALJ rejected the only two medical opinions in the record that assessed plaintiff's physical limitations, "he was left with no medical opinion from which to construct the physical RFC." Theresa W., 2021 WL 4324421, at *3. Accordingly, the RFC is not supported by substantial evidence. This error requires remand. The Court does not reach the merits of plaintiff's other arguments.

## VI.   CONCLUSION

Plaintiff requests that the Court remand for a calculation of benefits. See Doc. #14-1 at 13. Sentence four of 42 U.S.C. §405(g) permits the Court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g); see also Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004). "Only where the record is sufficiently complete and provides persuasive evidence of total disability, thus rendering further proceedings pointless, should the district court award benefits itself and remand simply for calculation of such benefits." Manago v. Barnhart, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). In other words, reversal with a remand solely for a calculation of benefits is appropriate only where any further proceedings would be "pointless." Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 1999).

The length of time a case has been pending, and the number

of hearings already held, are also relevant considerations in determining whether a matter should be remanded for rehearing or for calculation of benefits. See, e.g., Yulfo-Reyes v. Berryhill, No. 3:17CV02015(SALM), 2018 WL 5840030, at *12 (D. Conn. Nov. 8, 2018) (collecting cases).

This case is not appropriate for remand for calculation of benefits without rehearing. Plaintiff has applied for benefits twice, once in January 2015, with a final decision denying benefits issued in April 2017, see Tr. 73-92,[6] and again in or about December 2018, with the final decision being the one appealed here. Since the renewed application filed in 2018, which relied on substantially different evidence than the 2015 application, there has been no undue delay. More importantly, in this case, a further review of the available medical evidence would "plainly help to assure the proper disposition of the claim[.]" Butts, 388 F.3d at 385 (citation and quotation marks omitted).

Accordingly, the Court denies plaintiff's request to reverse and remand solely for a calculation of benefits. This matter is hereby remanded for further administrative proceedings consistent with this Ruling. On remand, the ALJ shall address

---

[6] It does not appear that plaintiff appealed the 2017 decision and, indeed, plaintiff's alleged onset date is April 28, 2017, immediately after that decision was rendered. See Tr. 35.

the other claimed errors not otherwise addressed herein. In particular, the ALJ shall ensure that the record includes expert medical opinion that is sufficiently persuasive and detailed to permit the formulation of an RFC. The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather, the Court finds remand is appropriate for further consideration of the evidence.

For the reasons set forth herein, plaintiff's Motion to Reverse Decision of the Commissioner and/or to Remand to the Commissioner **[Doc. #14]** is **GRANTED, in part,** to the extent it seeks remand for a rehearing, and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #17]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 16th day of December, 2021.

_____/s/_____
SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE